IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ralph J. Oxendine, | ) | C/A No. 3:08-4036-CMC-PJG |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| United States of America, | ) | |
| Defendant. | ) | |

This environmental tort case is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. The plaintiff, Ralph J. Oxendine ("Oxendine"), filed this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, against the defendant, the United States of America ("Government"). Essentially, Oxendine seeks compensation for property damage and personal injuries he allegedly sustained as a result of groundwater contamination that he contends originated at Shaw Air Force Base.

The Government has filed a motion to dismiss for lack of subject matter jurisdiction. (Docket Entry 16.) By order filed March 16, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Oxendine was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately. (Docket Entry 17.) On April 4, 2009, Oxendine filed a response. (Docket Entry 23.) This motion is now before the court for a Report and Recommendation. Having carefully considered the parties' submissions, the court finds that the Government's motion to dismiss (Docket Entry 16) should be granted.

PJG

**BACKGROUND**

For nearly seventy years, the United States Air Force and its predecessors have operated a military air base near Sumter, South Carolina currently known as Shaw Air Force Base ("Shaw AFB"). This air base has provided flying training, employed tactical reconnaissance and fighter forces, and actively provided military assistance in World War II, the Korean War, the Cuban Missile Crisis, the Vietnam War, the Persian Gulf War, the Iraq War, and other military conflicts. In the course of its military operations, waste disposal practices at Shaw AFB—as with other military installations around the country—have resulted in environmental contamination. In 1989, the State of South Carolina began conducting a well sampling program which indicated that some off-base wells were contaminated with trichloroethyelene ("TCE"). TCE is "a toxic organic solvent, known to be used by the military as a degreasing agent." Aragon v. United States, 146 F.3d 819, 822 (10th Cir. 1998).

Since 1975, the Air Force has been generally investigating and remediating environmental contamination at or near military installations. These efforts have been conducted pursuant to the United States Department of Defense's ("DOD's") nationwide Installation Restoration Program ("IRP"). As part of the IRP, DOD began investigating and remediating environmental contamination at Shaw AFB in the 1980s.

Also in the late 1970s and 1980s, Congress began enacting environmental legislation such as the Clean Water Act; the Comprehensive Response, Compensation and Liability Act ("CERLCA"); the Superfund Amendments and Reauthorization Act ("SARA"); and the Resource Conservation and Recovery Act ("RCRA"). Regulations implementing these environmental statutes did not take effect for several years following their enactment. Consequently, TCE was not regulated

PJG

as a toxic pollutant until 1978 pursuant to the Clean Water Act; as hazardous waste until 1980 under RCRA; and as a drinking water contaminant until 1989 under the Safe Drinking Water Act. (See generally Def.'s Mem. Supp. Mot. Dismiss at 10, Docket Entry 16-1 at 18 of 39.)

TCE was apparently used at Shaw AFB in the 1940s and 1950s in testing procedures at the "petroleum, oils, and lubricants" ("POL") yard, and as a solvent at a large aircraft maintenance hangar.[1] No evidence has apparently been uncovered showing the amount of TCE used at the POL yard or the hangar, or the manner in which the Air Force disposed of the waste TCE at that time. Recent testing shows that three private wells near Shaw AFB, including Oxendine's, contained contaminants, including TCE.

## DISCUSSION

A.  Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

---

[1]Other courts have recognized that the United States military commonly used TCE as a solvent for aircraft maintenance and other military activities. See, e.g., Aragon v. United States, 146 F.3d 819, 822 (10th Cir. 1998); Raytheon Aircraft Co. v. United States, 556 F. Supp. 2d 1265 (D. Kan. 2008); Snyder v. United States, 504 F. Supp. 2d 136 (S.D. Miss. 2007); Western Greenhouses v. United States, 878 F. Supp. 917, 923 (N.D. Tex. 1995); O'Neal v. Dep't of Army, 852 F. Supp. 327 (M.D. Pa. 1994); Bolinder Real Estate, L.L.C. v. United States, No. 2:97-CV-0912C, 2002 WL 732155 (D. Utah Apr. 24, 2002).

PJG

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

**B.      Jurisdiction Under the Federal Tort Claims Act**

   **1.      FTCA Generally**

Oxendine has filed this action pursuant to the Federal Tort Claims Act ("FTCA" or "Act"). 28 U.S.C. §§ 1346(b), 2671-2680. The Act provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver of immunity, however, is subject to exceptions. See 28 U.S.C. § 2680 (providing exceptions to the provisions of the Tort Claims Procedure statutes and to § 1346(b)'s waiver of sovereign immunity). The most important of these is the "discretionary function exception." See McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004) (*en banc*) (describing § 2680(a)'s exception as "the most important"). The discretionary function exception to the Government's waiver of immunity for tort claims provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the

*PJG*

federal agency or an employee of the Government." 28 U.S.C. § 2680(a). The discretionary function exception preserves sovereign immunity even if the Government was negligent, see Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir. 1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a).

If the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA and the district court is without subject matter jurisdiction to adjudicate it. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir. 2001) (finding statutory exceptions to the FTCA's waiver of immunity to be jurisdictional). The burden is on the plaintiff to show that the FTCA's waiver of immunity applies and that the statutory exceptions do not. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). Further, the Act's limited waiver of sovereign immunity and its exceptions must be strictly construed in favor of the sovereign. Welch, 409 F.3d at 650-51; see also Lane v. Pena, 518 U.S. 187, 192 (1996) (stating that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign").

### 2. Discretionary Function Exception

In Berkovitz v. United States and United States v. Gaubert, the United States Supreme Court established a two-part test to determine whether the discretionary function exception applies. Gaubert, 499 U.S. 315, 322 (1991); Berkovitz, 486 U.S. 531, 536-37 (1988). First, the allegedly negligent act or failure to act must not have been subject to a statute, regulation, or policy that prescribed a specific course of action for the government employee to follow. Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536. If the conduct at issue was governed by such a provision, then the government employee's action cannot have been discretionary. See Williams v. United States, 50

F.3d 299, 309 (4th Cir. 1995). Second, assuming that the employee had discretion because no statute, regulation, or policy required a particular action, then the employee's conduct must be susceptible to an analysis involving social, economic, or political policy considerations. Gaubert, 499 U.S. at 322-23. This prong is designed to ensure that courts apply the exception only to the type of discretionary conduct that Congress sought to protect through § 2680(a). United States v. Varig Airlines, 467 U.S. 797, 813 (1984).

The focus of the inquiry must be on the " 'nature of the conduct' " and not the " 'status of the actor.' " Gaubert, 499 U.S. at 322 (quoting Varig Airlines, 467 U.S. at 813); see also Baum v. United States, 986 F.2d 716, 720-21 (4th Cir. 1993) (holding that the court should look to the nature of the challenged decision and determine whether it is inherently grounded in policy considerations). The discretionary function exception not only protects high-level planning or policy activities, but also applies to discretionary activities of government employees that are not characterized as "operational" or "planning" decisions, as long as the activities are grounded in policy considerations. Gaubert, 499 U.S. at 325-26. Thus, "day-to-day operational decisions of government [employees] are entitled to immunity under the FTCA so long as the choices are 'susceptible to policy analysis.' " Smith v. Wash. Metro. Area Transit Auth., 290 F.3d 201, 208 (4th Cir. 2002) (quoting Gaubert, 499 U.S. at 325).

Moreover, for the exception to apply, the employee need not have actually conducted a policy analysis in connection with the challenged action or inaction. See Gaubert, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). The court must analyze the conduct at issue objectively, with an inquiry as to

PJG

whether the employee's decision is one where the court would expect inherent considerations of policy, rather than a subjective, fact-based focus on the circumstances surrounding the employee's exercise of a particular discretionary function. Baum, 986 F.2d at 720-21. When the employee is acting pursuant to a discretionary statute, regulation, or guideline, there is a strong presumption that the employee's conduct is grounded in the policies underlying that provision. Gaubert, 499 U.S. at 324; see also Bernaldes v. United States, 81 F.3d 428, 429 (4th Cir. 1996).

### 3. Applicability of Discretionary Function Exception to Oxendine's Claims

Applying this test to Oxendine's claims, the court finds that Oxendine has not carried his burden of proof to show that his claims fall within the FTCA's limited waiver of sovereign immunity and outside the discretionary function exception. First, the record contains no evidence that a Shaw AFB employee violated an applicable federal statute, regulation, or policy regarding the use, disposal, or remediation of TCE or public notification of environmental contamination. No evidence exists to establish TCE use at Shaw AFB *after* the enactment of the environmental statutes and regulations governing TCE. Further, Oxendine has introduced no evidence that the Government's conduct regarding remediation and notice violated any applicable, non-discretionary provision. Moreover, the Air Force's actions regarding the conduct of military operations is susceptible to policy analysis. See Gaubert, 499 U.S. at 322-23. Thus, the military's actions at issue in this matter fall within the discretionary function exception to the FTCA's waiver of immunity.

Other courts considering this issue have also determined that the military's actions regarding TCE prior to the regulation of that contaminant fall within the discretionary function exception. Aragon v. United States, 146 F.3d 819 (10th Cir. 1998); OSI, Inc. v. United States, 285 F.3d 947 (11th Cir. 2002); Snyder v. United States, 504 F. Supp. 2d 136 (S.D. Miss. 2007); Ross v. United



States, No. 04-6146, 129 Fed. Appx. 449 (5th Cir. 2005) (unpublished). The Tenth Circuit case of Aragon v. United States is remarkably on point. In Aragon, landowners who lived nearby Walker Air Force Base in Roswell, New Mexico claimed that military operations at the base had resulted in TCE contamination of their residential water wells. Aragon, 146 F.3d at 819. The United States Court of Appeals for the Tenth Circuit analyzed the claims under the discretionary function exception to the FTCA's limited waiver of immunity and concluded that the government's actions at issue met both prongs of the discretionary function test established by the Supreme Court in Berkovitz. First, the Aragon Court determined that none of the policies or orders relied upon by the plaintiffs provided specific, mandatory directives for the Air Force's disposal of waste water from its aircraft washdown operations. Aragon, 146 F.3d at 826. Second, the Aragon Court considered whether the military's activity was " 'of the kind that the discretionary function exception was designed to shield.' " Id. (quoting Berkovitz, 486 U.S. at 526); see also Gaubert, 499 U.S. at 331-32. The Aragon Court rejected the plaintiffs' argument that the Court's analysis as to the second prong should focus on groundwater protection policies, concluding that the pertinent policies were those affecting airbase operations. Aragon, 146 F.3d at 826. The Aragon Court had no trouble concluding that the military operations at Walker Air Force Base during World War II, the Korean Conflict, the Vietnam Conflict, and the Cold War "undoubtedly were subject to defense and security considerations which encompass the heart of military policy." Id. The Aragon Court found that the Government recognized its need to "weigh its groundwater protection policies against broader public and military policies" and "allowed the Air Force to place security and military concerns about any other concerns," including groundwater protection. Id.; accord Ross, 129 Fed. Appx. at 451 (relying

on Aragon in finding that the discretionary function exception applied to claims of TCE contamination allegedly originating from Tinker Air Force Base in Oklahoma).

This court agrees with the reasoning of the Aragon Court and other courts addressing alleged TCE contamination from military bases. In his opposition to the Government's motion to dismiss, Oxendine does not address the jurisdictional issue but rather relies on his evidence to prove TCE contamination and damages. (See generally Docket Entry 23.) However, while such evidence may be adduced in federal court against a private actor, the Government is immune from suit under the discretionary function exception. 28 U.S.C. §§ 1346(b)(1), 2680(a). Oxendine has made no showing—or even argument—that any federal statute, regulation, or policy specifically prescribed a course of action for government employees to follow with regard to the activities at issue.[2] Gaubert, 499 U.S. at 322. Further, the activity at issue falls squarely within the type of conduct that the discretionary function exception was designed to shield. Aragon, 146 F.3d at 827; Berkovitz, 486 U.S. at 526. Accordingly, even if the Air Force were negligent or abused its discretion, it is immune from suit pursuant to federal law. 28 U.S.C. § 2680(a); Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir. 1993).

4. **Strict Liability**

In addition to the discretionary function exception, to the extent that Oxendine seeks to hold the defendant liable pursuant to a claim of strict liability, Oxendine's claim is subject to dismissal. The FTCA does not waive sovereign immunity for strict liability claims; therefore, the court lacks

---

[2]By contrast, the plaintiffs in Aragon advanced military policy manuals, a regulation, an executive order, and a state law that they contended prevented application of the discretionary function exception. The Aragon Court considered each of these sources in turn and nonetheless determined that they did not prescribe a particular course of conduct with regard to TCE. Aragon, 146 F.3d at 823-26.



subject matter jurisdiction to hear such claims. See Laird v. Nelms, 406 U.S. 797, 799-803 (1972) (stating that the FTCA does "not authorize suits against the Government on claims based on strict liability for ultrahazardous activity"); see also 28 U.S.C. § 1346(b) (waiving sovereign immunity for injuries caused by a "negligent or wrongful act or omission").

## RECOMMENDATION

Pursuant to 28 U.S.C. § 2680(a), the Government is immune from suit on Oxendine's claims. Accordingly, the court has no jurisdiction over this matter and recommends that the defendant's motion to dismiss pursuant to Rule 12(b)(1) (Docket Entry 16) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 15, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).